UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DECORATION DESIGN
SOLUTIONS, INC.,                              Case No. 2:20-cv-12980

              Plaintiff,                      HONORABLE STEPHEN J. MURPHY, III

v.

AMCOR RIGID PLASTICS USA, INC.
and AMCOR RIGID PLASTICS USA,
LLC,

              Defendants.
_____/

**OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT [10]**

With a complaint originally filed in New Jersey State Court, Plaintiff

Decoration Design Solutions ("DDS") sued Defendants Amcor Rigid Plastics USA for

breach of express warranty, breach of implied warranty of merchantability, breach of

implied warranty of fitness for a particular purpose, and an illegal setoff. ECF 7, PgID

15–20. The case was removed to the United States District Court for the District of

New Jersey before being transferred to this Court due to a forum selection clause in

the parties' 2019 Asset Purchase Agreement ("2019 APA"). ECF 3. The Defendants

moved to dismiss, and the Court conducted a hearing on the motion via video

conferencing technology on July 14, 2021. ECF 17. For the foregoing reasons, the

Court will grant in part and deny in part Defendants' motion to dismiss based on the

1

Court's limited review during the motion to dismiss stage of proceedings and the express language of the parties' contract.

## BACKGROUND

DDS provides retail and contract decoration services for supplied containers: the company adds details like logos to products by use of methods of hot stamping and heat transferring. ECF 7, PgID 9. DDS primarily services the personal care and pharmaceuticals industries. *Id.* Amcor Plastics manufactures and sells rigid plastic containers that are utilized by other industries and are the types of products that DDS adorns. *Id.* In 2015, DDS and Amcor were in discussions and had a "proposed contractual agreement" for custom rigid plastic goods. *Id.* at 10. The complaint alleges that on March 1, 2016 Amcor submitted a written price quotation to DDS that "reflect[ed] the terms under which Amcor was willing to manufacture" the products in question. *Id.* at 10–11. DDS refers to the 2016 agreement as the "price quotation." *Id.*

Plaintiff alleges there were many issues with Amcor's plastic products that resulted in problems for consumers and lost profits for DDS. *Id.* at 11–13. DDS notified Amcor of the defects and Amcor conducted additional testing and modifications to the product. *Id.* DDS alleges that the modified products again failed and led to a recall and the roots of the current dispute. *Id.* DDS alleges that Amcor refused to provide any financial relief to DDS but instead "began setting off the unpaid balance of Amcor's invoices to DDS via withholding payments otherwise due DDS." *Id.* at 13. Accordingly, DDS alleges that they bore the "entire financial loss

attributable to the failed Amcor tubes." *Id.* at 14. And because of their knowledge that DDS would incur a loss from the "defective products," the present suit is meritorious. *Id.*

In response, Amcor moved to dismiss the second amended complaint with a much more extensive background of the parties' business dealings. ECF 10. That background reveals that the parties entered a Memorandum of Understanding in 2015 ("2015 MOU") along with the 2016 Price Quotation presented in the complaint. *Id.* at 40. And the motion sets out how the parties also ended their agreement to work with one another through the 2019 APA that expressly waived Amcor "from any and all actions, suits, debts, demands, damages, claims, charges, judgments, liabilities, costs and expenses . . . whether known or unknown, suspected or unsuspected, which DDS now has or claims to have against Seller . . . arising out of the Memorandum of Understanding." *Id.* at 42–43. Thus, the motion to dismiss hinges, in part, on a theory that the 2016 Price Quotation flows from the 2015 MOU and that the present suit has therefore been waived under the 2019 APA. While a compelling argument, it is not an argument the Court can consider at this stage of the litigation.

## LEGAL STANDARD

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every

3

reasonable inference in the nonmoving party's favor. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). In reviewing a Rule 12(b)(6) motion, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

The motion to dismiss presents two separate theories under which Defendants argue the complaint ought to be dismissed. First, Defendants argue the claims must be dismissed pursuant to the release provision in the 2019 APA. ECF 10, PgID 44–46. Second, and in the alternative, Defendants argue they are entitled to a partial dismissal based on the terms of sale in the 2016 Price Quotation. *Id.* at 47–52. The Court will address each theory in turn.

I.   <u>Dismissal Under the 2019 APA</u>

Defendant's first theory of dismissal is grounded in arguments the Court cannot consider in a Rule 12(b)(6) motion. The 2015 MOU and 2019 APA were not attached to the complaint or found in public records. While it is clear the federal court in New Jersey was aware of their existence, ECF 3, PgID 43–44, neither document was referred to in the compliant, despite being central to its claims. *Bassett*, 528 F.3d

4

at 430. The compliant never mentioned a preexisting memorandum of understanding, a specific 2015 MOU, or that the parties parted ways following a 2019 APA. Instead, the complaint framed the entire dispute on the 2016 Price Quotation. Although Plaintiff did not attach the 2016 Price Quotation, it is mentioned in the complaint, ECF 7, PgID 10–11, and the terms of the document are central to determining the merits of the claims. Thus, while the Court may not consider the 2015 MOU or the 2019 APA to resolve Defendants' motion to dismiss, it may consider the 2016 Price Quotation attached to the motion to dismiss. ECF 10-3; *see Bassett*, 528 F.3d at 430.

Because the Court may not consider the 2019 APA, the Court will deny the motion to dismiss the second amended complaint as to Defendants' first theory.

II.   Partial Dismissal Pursuant to the 2016 Quotation's Terms of Sale

Next, Defendants argue they are entitled to dismissal of claims II (breach of implied warranty of merchantability) and III (implied warranty of fitness for particular purpose) of the compliant because the Terms of Sale in the 2016 Price Quotation that limit warranties and damages should be enforced. ECF 10, PgID 47–48. Section 11(b) of the 2016 Price Quotation states: "SELLER MAKES NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER EXPRESS OR IMPLIED WARRANTY, EXCEPT AS PROVIDED BY PARAGRAPH 11." ECF 10-3, PgID 82.

Both Michigan law and the Uniform Commercial Code ("U.C.C.") § 2-316(2) allow sellers to exclude implied warranties of merchantability and fitness for a particular purpose that would otherwise be implied in the sale of goods. *See* Mich.

Comp. Laws § 440.2316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify warranty of fitness the exclusion must be a writing and conspicuous."). Michigan law also requires the Court to enforce unambiguous contract language such that "a court may not substitute its judgment for the intent of the parties and remake the contract into something the parties never intended." *Vill. of Edmore v. Crystal Automation Sys. Inc.*, 322 Mich. App. 244, 263 (2017). That principle is true because "[p]arties are free to contract as they see fit, and courts must enforce contracts as written." *Id.*

Here, the terms of the 2016 Price Quotation are considered by the complaint to be a contract, ECF 7, PgID 10, 13, 15, and with that understanding, the Court will enforce the contract's unambiguous terms. The 2016 Price Quotation is clear that there are no express or implied warranties of merchantability or fitness for a particular purpose in this transaction. ECF 10-3, PgID 82. In fact, "SELLER EXPRESSLY DISCLAIMS AND EXCLUDES ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND ANY WARRANTY OF USAGE OF TRADE OR COURSES OF DEALING." *Id.* The parties clearly and unambiguously agreed to waive the implied warranties of merchantability and fitness for a particular purpose. Thus, claims II and III are dismissed for failure to state a claim upon which relief could be granted due to the express waiver.

Defendants also argue that any remaining claims are subject to limitations and exclusions on damages based on the Terms of Sale in the 2016 Price Quotation. ECF 10, PgID 48–49. Specifically, Defendant argues that § 13 of the Terms of Sale "expressly limits any damages to which DDS otherwise may be entitled to recover to the amount of the purchase price paid by DDS for the non-conforming goods." *Id.* at 49. The provision states: "THE MAXIMUM LIABILITY, IF ANY, OF SELLER FOR ALL DAMAGES, INCLUDING WITHOUT LIMITATION CONTRACT DAMAGES AND DAMAGES FOR INJURIES TO PERSONS OR PROPERTY . . . IS LIMITED TO AN AMOUNT NOT TO EXCEED THE PURCHASE PRICE OF THE PRODUCTS AT ISSUE IN THE CLAIM." ECF 10-3, PgID 82.

As with the limitations on warranties, U.C.C. § 2-718(1) and Michigan law permit parties to limit damages if a breach occurs and Courts have routinely enforced such limitations. *See* Mich. Comp. Laws § 440.2718(1) ("[T]he agreement may provide for remedies in addition or in substitution for those provided . . . and may limit the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts."). Again, based on the contract's plain and unambiguous language, the parties have agreed to limit damages to not exceed the purchase price of the products at issue in the claim.

Plaintiff's only argument to the contrary is that the disclaimers in the Price Quotation "failed in their essential purpose, and are procedurally and substantively unconscionable." ECF 7, PgID 15–17, 19; *see also* ECF 14, PgID 137–38, 140–44. But

7

unconscionability requires a showing of both procedural and substantive unconscionability. *Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 143 (2005) ("In order for a contract or contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present."). Here, Plaintiff has pleaded no facts to support either form of unconscionability. And a bald face assertion of it is insufficient. *Ashcroft*, 556 U.S. at 678. There has been no showing that there was uneven bargaining power between the parties, hidden warranty exclusions, or terms that "shock the conscience." *See WXON-TV, Inc. v. A.C. Nielsen Co.*, 740 F. Supp. 1261, 1264 (E.D. Mich. 1990) ("The first prong of the test has been described as the procedural unconscionability inquiry, because it looks at the relative bargaining power of the parties and the circumstances under which the contract was made."); *see also Clark*, 268 Mich. App. at 144 ("[A] term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience."). Without that type of a showing, the unconscionability argument fails.

In sum, the Court will deny in part the motion to dismiss the second amended complaint because the Court's limited review on a motion to dismiss does not permit the Court to consider the 2019 APA. That said, the Court will grant the partial motion to dismiss claims II and III because the parties waived the claims in the unambiguous 2016 Price Quotation. Further, the Court will find that the parties agreed to a limitation of damages not exceeding the purchase in the 2016 Price Quotation.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion to dismiss the compliant [10] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the parties must **SUBMIT** a joint status report detailing their willingness to engage in meaningful mediation on the remaining claims and whether they would like the Court to appoint a mediator or select their own **no later than August 17, 2021**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 10, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 10, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager